SALMONS v. WESTERN UNION TELEGRAPH CO.

(Filed December 1, 1903.)

TELEGRAPHS—*Contracts—Negligence—Damages.*

> In this action against a telegraph company for damages for delay
> in the delivery of a message, the facts render the company
> liable only for nominal damages.

CLARK, C. J., and DOUGLAS, J., dissenting.

ACTION by L. J. Salmons against the Western Union Telegraph Company, heard by Judge *Walter H. Neal,* at June Term, 1903, of the Superior Court of WILKES County. From a judgment for the plaintiff the defendant appealed.

*W. W. Barber,* for the plaintiff.
*Glenn, Manly & Hendren,* for the defendant.

MONTGOMERY, J.   This action was brought by the plaintiff to recover of the defendant damages for its negligent failure to deliver a telegram.   In the complaint it is alleged that the plaintiff agreed with a man by the name of Swaim, a licensed distiller of whiskey, to pay the revenue tax on a certain lot of whiskey which had been distilled by and belonged to Swaim, and that the plaintiff had sent Foote to Statesville to buy the stamps; that after Foote had gone to Statesville to procure the stamps the plaintiff learned of some irregularities connected with the whiskey, and in consequence thereof delivered to the defendant's agent at Roaring River, N. C., a telegram to J. A. Cooper in the following words: "Tell A. V. Foote if he has not had the stamps issued for J. M. Swaim not to have it done."   That the telegram was kept at the receiving station, through the negligence of the operator there, and did not reach the sendee at Statesville until after Foote had bought

the stamps; that the whiskey was "spirited away"—stolen— and the stamps were useless. By consent of the parties it was agreed that his Honor should hear the testimony, find the facts and adjudge the rights of the parties. Upon the evidence his Honor found the following to be the facts:

1. That on the 24th day of May, 1900, one Swaim was the owner of a lot of distilled spirits which was in a government warehouse, which had not been stamped as required by law.

2. The plaintiff Salmons had no interest whatever in said spirits, and Swaim, the owner, was a government distiller.

3. Swaim came to plaintiff and asked him for the money with which to pay the taxes due the government on the said spirits, and plaintiff agreed to let him have the sum of two hundred and three (dollars) and sixty-one cents ($203.61) for that purpose, and the said Swaim was to repay the said amount as soon as he could sell the spirits after it had been stamped. Swaim had agreed to sell the spirits to one Sowers. A man by the name of Foote was going to Charlotte, and on his return was to stop at Statesville on some business. Statesville is the stamp office for this Internal Revenue District. The plaintiff asked Foote if he would take the "withdrawals" down to Statesville and get the stamps for the whiskey. "Withdrawals" are certificates which are presented to the Collector, and he thereupon issues the stamps to correspond. Foote consented to do this, and the plaintiff drew his check on the National Bank of Statesville, payable to said Foote, for the said sum of two hundred and three and 61-100 dollars, and gave it to Foote, to be applied in the purchase of the stamps. Foote was to be in Statesville on the 25th day of May, 1900, at which time he was to purchase the stamps. On the afternoon of the preceding day, to-wit, May 24, 1900, the plaintiff received information that there were irregularities at Swaim's distillery, making the spirits liable to seizure. The plaintiff then went to the telegraph office of the defendant company

and asked defendant's operator if he could send a message through to Statesville at once. The plaintiff told the operator that the message was important and to send it off at once, and he said he would do so. So on the 24th of May, 1900, at 6:48 P. M., the plaintiff delivered to defendant the following message:

MAY 24, 1900.

*To* J. A. COOPER,
          *Statesville, N. C.*

Tell A. V. Foote if he has not had stamps issued for F. M. Swaim to not have it done.          L. J. S.

The charges, 25 cents, on the above message were prepaid. Foote reached home next evening, having purchased the stamps and without having received any message not to make the purchase of the stamps.

4. Swaim went to plaintiff's home and asked him to furnish this money. Plaintiff agreed to do so, and the plaintiff was to loan this money to Swaim, and in accordance with this agreement gave the check to Foote to go to Statesville to buy the stamps for Swaim. At this time the whiskey was in the government warehouse, but the spirits was "spirited" away about that time and could not be stamped. When spirits once goes into a warehouse it must be stamped.

5. Cooper, the addressee in the telegram, is the president of the bank on which the plaintiff made his check.

6. Cooper, president of the bank, received the telegram at 9:50 A. M. on the morning of May 25th, 1900, after Mr. Foote had gone to the bank the same morning and had Mr. Cooper, the president of the bank and addressee in the telegram, to certify that plaintiff's check was good, so the internal revenue agent would accept the check in lieu of money.

7. That as soon as Mr. Cooper received the telegram he

sent the same at once to Mr. Foote at the revenue office, but it was too late, as the purchase of the stamps had already been made.

8. If the telegram had been received by Cooper before Foote went to the bank he would have delivered the said telegram to Foote.

(This finding (8) is based upon that part of Cooper's statement to which the defendant objected and excepted in apt time.)

9. The president of the bank, Cooper, certified to Foote's check at 8 A. M. on the 25th May, 1900, and the bank opened for business at 9 A. M.

10. Foote did not get any message from Cooper or Salmons.

11. If he had he would not have purchased the stamps.

(The defendant, in apt time, objected to the testimony of Foote on which this finding is based.)

Upon his findings of fact his Honor adjudged that the defendant was guilty of negligence; that the transaction between Swaim and Salmons amounted, under the undisputed facts, to no more than an agreement to make the loan, which the plaintiff could recall at any time, and there was judgment for the amount paid by Foote for the stamps and the costs.

We are of the opinion that his Honor was in error in his construction of the contract between Salmons and Swaim and in granting judgment against the defendant for the amount of the check. Upon the facts found by his Honor it appears to us that he should have ruled as a matter of law that the transaction between the plaintiff and Swaim was a complete one and that the loan was absolute and unrestricted. Swaim came to the home of the plaintiff to borrow money to buy revenue stamps to be placed on certain whiskey which had been distilled by Swaim. The plaintiff agreed to let him have the money for that purpose on the promise of Swaim to

return it after he had sold the whiskey. The plaintiff then drew his check for the exact amount, payable to Foote, who happened to be going to Statesville, to buy the stamps, and Swaim went home. It made no difference that a check was handed to Foote instead of the money. The plaintiff had agreed to lend Swaim the money to buy the stamps, and, as found by his Honor, in accordance with that agreement, gave the check to Foote to go to Statesville to buy the stamps for him. At that time the whiskey was in the warehouse. From the moment the plaintiff handed the check to Foote, according to the agreement between plaintiff and Swaim, the transaction between the plaintiff and Swaim was closed and Swaim became the debtor to the plaintiff for the amount of the check. If there had been any agreement between the parties that Foote was to buy the stamps and hand them to the plaintiff, as that the plaintiff could see that they were put upon the barrels of liquor, or, in other words, if there was any evidence going to show that Foote was the agent of the plaintiff, a different view of the matter might be taken, but there was no such evidence. So far as we can see, the plaintiff did not mistrust Swaim. He lent him the money without security, so far as the record shows. When the agreement to lend the money was made there was nothing to be done between Salmons and Swaim; the stamps were to be bought for *Swaim,* and nothing being said to the contrary in the findings of fact by his Honor, were to be placed by Swaim upon his barrels of whiskey. Under the findings of fact in this case, how can it be doubted that if Foote had abused his trust the plaintiff would not have recovered from Swaim the amount of the check. If so, how can he recover of the defendant? If he could have recovered from the defendant, there is nothing which would keep him from recovering from Swaim also, as we have seen. The defendant, therefore, from this view, owed the plaintiff no duty in reference to the transactions

between Swaim and the plaintiff. The judgment should have been against the defendant on account of its negligence in not sending the telegram, for the amount paid by the plaintiff for sending it, and the plaintiff's expenses attendant upon the sending of it.

New trial.

CLARK, C. J., dissenting. It is found as a fact that Swaim went to the plaintiff's house and asked him for money to buy stamps; the plaintiff agreed to this and gave a check to Foote to buy the stamps in Statesville. These stamps are really and simply governmental tax receipts, and when the whiskey was stolen before these receipts were affixed, it was the same as if a house had been burned after the sheriff had given his receipt for taxes. The plaintiff agreed to furnish money to pay these taxes, and from the surrounding circumstances it is tolerably plain that he was not willing to hand the cash over to Swaim, but preferred to send him, instead, the stamps or tax receipts. Whether he did this through caution or at request of Swaim the fact that he was to pay the tax for Swaim is a reasonable inference that might have been drawn by the jury, and which the Judge, acting by consent as a jury, does draw, for he finds as a fact that the transaction between Swaim and Salmons, upon the undisputed facts, was "an agreement to make the loan which the plaintiff could recall at any time." The plaintiff has never delivered any money or money's worth to Swaim. There is no evidence nor finding that Foote was Swaim's agent. He was the plaintiff's agent, according to the evidence, for the check drawn by the plaintiff was made payable to Foote, not to Swaim. Hence, Swaim acquired no control over the check. He could not have drawn the money, nor have gotten possession of it in any way, and never did receive the money nor have it or the check in his control. If the plaintiff had put the money in custody of a

common carrier directed to Swaim or the collector, he would, on learning of the destruction of the property, have had a right of stopping *in transitu.* Here, the check being signed by the plaintiff and payable to Foote, under instructions from the plaintiff, not from Swaim, to draw the money and use it for the purchase of stamps, Swaim had no control over it and could neither by telegraph nor in person have controlled Foote. The plaintiff still had the control of the matter. He could stop Foote's drawing the money, either by message sent to him or by notifying the bank not to pay the check. He chose the former method as more courteous and proper. By telegram delivered to the defendant at 6:48 P. M. he requested a friend at Statesville, only some thirty-five miles away, to notify Foote not to buy the stamps, *i. e.,* not to get the tax receipts. By gross negligence of the defendant the message was not delivered till 9:50 next morning. The check was not paid till after 9 o'clock and immediately after Foote bought the stamps, *i. e.,* paid the tax. The plaintiff has lost the sum thus paid out. This loss would not have occurred but for the gross neglect of the defendant to discharge its duty by prompt delivery of the telegram sent by the plaintiff, for which duty it has received chartered privileges and for which in this instance it accepted the plaintiff's money. Swaim has never received any money from the plaintiff, and had no control over cashing the check. He had no power to stop it and did not attempt to do so. The defendant contracted with the plaintiff to deliver promptly a message which would have prevented the cashing the check (and the payment of the proceeds to the Collector), and is liable to the plaintiff for the amount he has lost by such default. The judgment below should be affirmed.

DOUGLAS, J., concurs in the dissenting opinion.